JOHN M. SMITH v. JACOB KISER.

*Contract—Indemnity—Surety.*

The plaintiff deposited with defendant a fund to indemnify the latter against any loss incurred as surety upon a recognizance to answer an indictment against the former and two other persons. Plaintiff forfeited the recognizance and fled the State, and judgment *ni si* was rendered on the recognizance, for a sum greater than that deposited. Under advice of plaintiff's attorneys defendant made an arrangement whereby all the parties in the indictment were allowed to submit and judgment suspended on payment of costs, and he paid the money in his hands into the clerk's office in pursuance of that arrangement. After paying plaintiff's share of costs the balance of the money was applied by the clerk on the costs of plaintiff's co-defendants in the indictment ; *Held*, that this arrangement was within the scope of the contract of indemnity, and the plaintiff was not entitled to recover the balance of the fund from his surety.

CIVIL ACTION, tried before *MacRae, Judge*, at Fall Term, 1887, of GASTON Superior Court.

The plaintiff brought this action before a justice of the peace in the county of Gaston to recover $93.30 from the defendant, and it went by appeal to the Superior Court of that county.

The following is so much of the case stated on appeal as need be set forth here:

"The plaintiff testified, that at the Fall Term, 1885, of said Superior Court an indictment was pending and tried against himself, J. B Carpenter and Bill Sneed, for disturbing public worship, resulting in a mistrial; plaintiff and the other co-defendants were required to give bond in the sum of $200 each for his appearance at the next term of Court, and he gave bond with the defendant, J. Kiser and J. S. Carpenter, as sureties; after Fall Term, 1885, and before the term to which he was bound to appear, witness left the State and went to Texas, without notifying defendant Kizer that he

intended to leave, when and where he was going, nor when he proposed to return, and, in fact, did not return to the State until February, 1887; that before leaving he had turned over to J. S. Carpenter, the other surety on his bond, with instructions to deliver the same to defendant Kiser, a promissory note made by one ...... Carpenter and the said J. S. Carpenter, payable to witness, and upon which there was due witness a balance of about $140; that this note was so placed for the purpose of indemnifying Kiser against any loss he might incur by reason of his said suretyship; that Kiser collected on this note $140, no part of which had been paid to witness; that he had not communicated with Kiser during the time of his absence; that T. H. Cobb and G. F. Bason were his attorneys in that indictment; that he had demanded the amount sued for from Kiser before this suit was brought, and he refused to pay him anything.

The Clerk of said Superior Court produced the dockets of the Spring Term, 1886, and showed that defendant Smith at that term had been called and failed, and a judgment *ni si* entered against him and the said sureties on his bond; that afterwards, during the term, a submission was entered for all the defendants, and the judgment suspended on the payment of the costs, one-third of said costs to be paid by each; that the whole amount of costs was $242.45, one-third of which was $80.81⅔; that the defendant Smith's entire costs, as taxed against him, was $155.60; that Smith had more witnesses sommoned than the other defendants, and hence he taxed the larger part thereof against him; that defendant paid to him $140, of which he credited $98.80 on the bill of costs of Smith, and the balance, $41.20, he credited on bill of costs of Smith's co-defendant, Burt Carpenter. The amount of State costs against Smith in said criminal action was $53.25, and the remainder of the $98.90 was applied by witness to the payment in part of said Smith's own witnesses'

SMITH *v.* KISER.

fees in said case.    Defendant Sneed paid all his part of State·
costs in said prosecution.

The judgment docket of said Court was introduced by
plaintiff, showing the judgment in said criminal action.
Defendant admitted the collection of the $140 on said note,
and the application thereof to the bill of costs, and claimed
that he did it under the advice of the attorneys for Smith.

The attorneys testified that they so advised Kiser because
the case had been pending a long time; there had been two·
mistrials of the same, both occupying a long time; that
their client had already judgment *ni si* entered on the $200
bond, and the Solicitor had offered to them not to prosecute
the *sci. fa.* to final judgment, and to suspend judgment in the
main cause, provided they would submit their client and
apply the $140 in Kiser's hands to the satisfaction of the·
costs; that seeing they could, by pursuing this course, cer-
tainly save their client the difference between $140 and $200,
and also end the prosecution of the indictment, they ac-
cepted the offer.    They admitted that they were not author-
ized by Smith to apply the $140 to the satisfaction of the·
bill of costs.

The Court—the facts not being controverted—directed the
jury to render a verdict in favor of the plaintiff for $41.20,·
being of opinion, as the case states, that the defendant was
liable for so much money as was paid on account of the costs·
of the prosecution mentioned as was taxed against the de-·
fendant Carpenter therein.    A verdict was so entered; there
was a judgment for the plaintiff accordingly and the de-
fendant appealed.

*Mr. R. W. Sandifer*, for plaintiff.
*Mr. Platt D. Walker*, for defendant.

MERRIMON, J., (after stating the case).    The defendant·
was the plaintiff's surety for the latters appearance to an--

swer a criminal charge against him at a particular term of the Court mentioned. He knew that if he failed to appear in Court as he was bound to do, and offered no lawful excuse for such failure, his surety, the defendant, would be liable and compelled to pay the State two hundred dollars.

Knowing this, he placed in the hands of the defendant a note upon which was due about one hundred and forty dollars, to indemnify him " against any loss he might incur by reason of his suretyship." How indemnify him against loss? Did he intend that the defendant should wait until judgment absolute should be entered against him and he was compelled to pay two hundred dollars and costs, and then apply the money collected upon the note as far as it would serve the purpose to indemnify? We think not. To say that he did, is not, it seems to us, a fair interpretation of his meaning and purpose. It is more reasonable to say, that he meant and intended that the defendant should collect the note and apply it to the best advantage to prevent liability as far as practicable, that " he might incur by reason of his said suretyship," and thus indemnify himself. This is a reasonable and just view of his purpose and one that harmonizes with his duty to the defendant. It is strengthened by the fact that he did not return to the State until months after in the order of such things the judgment against the defendant would have been made absolute and he would have been compelled to pay the same, as well as costs.

The defendant so interpreted and acted upon the plaintiff's instructions to him as to the application of the note. The compromise he made with the solicitor for the State under the wise advice of the plaintiff's counsel was fortunate and advantageous for him as well as the defendant. The money collected upon the note was faithfully applied for the plaintiff's benefit—his liability made much less by the compromise—and in effect, as he directed it to be.

The fact that a part of it was applied to pay costs of one of the defendants in the criminal action other than the plaintiff cannot to any extent alter the case—the compromise embraced such application of that much. The plaintiff's remedy, if he has any as to the money, is against the party for whose benefit it was applied—certainly not against the present defendant.

There is error. The defendant is entitled to a new trial, and we so adjudge. To that end let this opinion be certified to the Superior Court.

*Venire de novo.*